UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MICHELLE DANIELS                              CIVIL ACTION NO. 07-cv-1152

VERSUS                                        **REFERRED TO:**

LOUISIANA STATE UNIVERSITY                    **MAGISTRATE JUDGE HORNSBY**
HEALTH SCIENCE CENTER-
SHREVEPORT

**MEMORANDUM RULING**

**Introduction**

Michelle Daniels ("Plaintiff") is a former long-term employee at the LSU Health Sciences Center ("LSUHSC"). She resigned her employment in 2002 in lieu of an administrative termination that was looming because she had exhausted all available leave. A few years later, Plaintiff applied for a job at LSUHSC and was recommended for the position, but the hospital administrator ordered that Plaintiff not be hired. Plaintiff filed this civil action against LSUHSC alleging a violation of the American With Disabilities Act ("ADA") and a similar state law. She asserts that she was denied employment because she has a record of an impairment or is regarded as having an impairment, based on her prior addiction to pain medication. Before the court is LSUHSC's Motion for Summary Judgment (Doc. 17).

**Summary Judgment Record**

The parties have submitted deposition and affidavit testimony of Plaintiff and several administrators or employees at LSUHSC. The record shows that Plaintiff was employed in a secretarial-type position in hospital administration from 1991 until 2002. Plaintiff took extended leave in 2000, 2001 and 2002 for medical treatment, including surgery to treat back pain. David Fuqua, Director of Human Resource Management, wrote Plaintiff a letter dated August 2002 to advise that the hospital was contemplating non-administrative action against Plaintiff because she had been out of the office since June 24, 2002 and had exhausted all available leave. Mr. Fuqua wrote that neither Human Resources nor Plaintiff's department had received information from Plaintiff's doctor as to the expected duration of the absence. Fuqua asked for appropriate information, and he advised that Plaintiff might be administratively terminated under civil service rules if the term of absence was going to be excessive. Mr. Fuqua did not receive a response, so he wrote Plaintiff about two weeks later and advised that her employment was being administratively terminated effective August 19, 2002. Plaintiff later elected to resign her position on August 14, 2002 in lieu of the administrative termination.

Plaintiff testified that she became addicted to pain medication after she had back surgery in September 2001. Plaintiff was nonetheless able to return to work in December 2001, and she remained on the job until June 2002. A treating physician recommended treatment for the addiction. Plaintiff called one person at LSUHSC, Betty Johnson, and told

her that she needed to get off of pain medication and would be going on leave to be treated by a physician. Plaintiff testifies in an affidavit that she disclosed in her FMLA paperwork that she needed leave for drug addiction therapy. Plaintiff enrolled in a one-week inpatient rehabilitation program, which was followed by six weeks of outpatient care that required Plaintiff to attend rehabilitation classes from 8:00 a.m. to 5:00 p.m. each day. After the seven weeks of treatment, Plaintiff had to attend occasional meetings, but the meetings schedule would not have prevented Plaintiff from working. Plaintiff testifies that the treatment was successful.

Plaintiff was asked to explain how the addiction affected her work between December 2001 and the June 2002 commencement of treatment. Plaintiff said: "It didn't. I mean, it didn't affect my daily work." She agreed that she had no difficulty getting to work on time, no difficulty staying at work all day, no need to leave early, and no difficulty in completing her work activities. Plaintiff Depo. at p. 54. Plaintiff added later in the deposition that she wished to clarify that her addiction did prevent her from working when treatment was required (because treatment consumed the work day and did not allow attendance), but Plaintiff repeated that her addiction did not otherwise affect her ability to perform her daily work routine. She agreed that at the end of her outpatient treatment she was ready, willing and able to go back to work. Dep. at 77-80.

Plaintiff applied for a number of jobs at LSUHSC after her treatment was completed. In 2005, she applied for a position as an administrative coordinator. Lynda Matthews

conducted the interviews and informed the Human Resources analyst for her department that she wanted to hire Plaintiff for the job. Dave Fuqua, Director of Human Resources, learned of Matthews' recommendation to hire Plaintiff. Mr. Fuqua testified that he was not aware of why Plaintiff had been absent prior to her resignation, but he did know she had surgery before the absence. Mr. Fuqua had talked to Hospital Administrator Joseph Miciotto about Plaintiff's potential hiring, and Miciotto told him to hold off temporarily.

Mr. Miciotto testified that he was concerned about rehiring Plaintiff because of her mediocre job performance in the past. He cited concerns about Plaintiff's attendance, commitment to work, and lack of detail. When Mr. Fuqua told him that Plaintiff might be hired, Miciotto consulted his supervisor, Dr. Clay, and asked if he felt as strongly as Miciotto did about not offering Plaintiff employment. Dr. Clay said that he concurred because of Plaintiff's poor attendance record.

Miciotto told Fuqua that Plaintiff was not to be hired in his department because she was not eligible. Fuqua said that he would have to put Plaintiff on a do-not-hire list, and Miciotto said that was okay. It is not certain that a physical list exists, but the persons on the list are not eligible for employment anywhere in the hospital, and there is no procedure to get off the list. Miciotto was asked why he had not placed Plaintiff on the list when she resigned in 2002. He said he had no specific reason other than that Plaintiff had not been terminated. Plaintiff later called Ms. Matthews about her anticipated hiring, and Ms. Matthews directed

her to speak to Mr. Fuqua. He told Plaintiff that she was on a do-not-hire list and would not get the job.

Miciotto was asked whether he had ever been informed, directly or indirectly, that Plaintiff had received treatment for drug dependency. Miciotto estimated that it was about two or three months after Plaintiff's resignation when he heard hallway gossip that, following Plaintiff's spine surgery, "she became addicted to some narcotic that was used for pain management." Miciotto was not asked about any perceptions or opinions he had about Plaintiff or her ability to work as a result of that addiction.

Most of the questions for Miciotto were aimed at his reasons for placing Plaintiff on the do-not-hire list. He never mentioned drug addiction or other health issues. Instead, he cited a lack of commitment as exhibited by "day-in, day-out" instances of Plaintiff informing co-workers and supervisors that she had to leave to pick up her children, go to the hairdresser, attend to a matter at home, or take care of other personal issues. Miciotto said that such occasions were "very, very frequent." He mentioned attendance often, as well as Plaintiff's lack of response to direction from supervisors that she address her attendance deficiencies. Other administrators had voiced similar complaints to Miciotto, including that Plaintiff was "leaving in the middle of the work day at a moment's notice." Miciotto was quite candid about his role in the decision, as evidenced by this exchange:

A. If Dave [Fuqua] hadn't called me, she would have been hired.

Q. What stopped the hiring?

>    A.   I did.

>    Q.   And why?

>    A.   Because of her past employment performance.

Plaintiff was never formally disciplined because of the issues Miciotto cited, but she did receive written warnings about the attendance issue in particular. Debbie Henry issued a memorandum to Plaintiff in 1996 and advised that Plaintiff had far exceeded the number of hours of sick leave within a fiscal year that triggered a requirement of a physician's certificate for future approvals of sick leave. Henry also warned that Plaintiff's leave records showed "an excessive amount of unplanned absences of short duration (less than 4 hours)." Henry wrote that such absences can "play havoc" on the staff's schedule and ability to cover work. Ms. Henry wrote a similar memo in 1997 that expressed concern about attendance issues and imposed a requirement of a doctor's excuse for sick leave requests, even though such excuses were ordinarily not required at the beginning of a fiscal year. Plaintiff was told that any request for annual leave had to be approved by all administrative staff and by Ms. Henry. The memo also noted performance concerns, citing three specific mistakes, and encouraged Plaintiff to recognize a need for attention to detail and to limit personal telephone calls. A 1999 memorandum from Ms. Henry again focused on an "excessive number of 'unscheduled' requests for annual leave" and threatened that future requests could be treated as leave without pay. The memorandum stressed that it was "extremely important that [Plaintiff] present to work on a regular basis" because of limited staffing resources.

Dawn Britt, another supervisor, wrote Plaintiff in 2000 about her high number of sick leave hours. A doctor's excuse was required for any further sick leave. Patsy Cochran, a supervisor from 2001 through 2002, attaches to her affidavit copies of e-mails from 2002 in which Plaintiff advised that she would be leaving unexpectedly for a hair appointment, had clocked in at irregular times because of car trouble or child care issues, and had left early to pick up a sick child. Cochran also submits notes of a March 2002 meeting that was held to discuss an upcoming evaluation of Plaintiff. Among the concerns noted were time away from her desk and the amount of leave, particularly unexpected absences.

Plaintiff testified that no LSUHSC administrator told her that she was not hired because of her history of drug addiction or even so much as mentioned that history. Plaintiff nonetheless reached the conclusion that her history of drug addiction was behind the decision because, "That's the only reason there would be for not rehiring me." Plaintiff Depo. at pp. 30-33.

**Analysis**

### A. Introduction; Disability Defined

The ADA prohibits discrimination in employment against qualified persons with a disability. A threshold requirement is that the plaintiff must establish that she has a "disability" as defined by the ADA. Waldrip v. General Electric Co., 325 F.3d 652, 654 (5th Cir. 2003). Defendant's motion argues, among other things, that Plaintiff can not create a genuine issue of fact as to whether she has a disability.

A plaintiff may look to one or more of three definitions of "disability" found in 42 U.S.C. § 12102(2).  The statute states that disability means "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."

Plaintiff states at footnote two of her memorandum (Doc. 22) that she does not claim that she is currently disabled, so she bases her claim on the "record of" and "regarded as" prongs of the definition of disability.  It is nonetheless helpful to review how Plaintiff's condition would be assessed under the first prong of the definition.  The statute, with respect to the first prong, requires that the person have an impairment that "substantially limits" one or more "major life activities."  The EEOC has stated in its regulations that major life activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. § 1630.2(I). Plaintiff, when arguing her position under the other two prongs, asserts a perception or record of disability based on an impairment (addiction to pain medication) that substantially impairs the major life activity of working.

Whether a person is substantially limited in an activity such as working is the subject of a regulation found at 29 C.F.R. § 1630.2(j).  The person must be at least significantly restricted as to the condition, manner or duration under which she can perform a major life activity as compared to the average person.  Factors include the nature and severity of the

impairment, the duration or expected duration of the impairment, and the actual or expected permanent or long-term impact of the impairment. The "rigorous and carefully individualized inquiry" is conducted on a case-by-case basis. Waldrip, 325 F.3d at 654.

Drug addiction may be an impairment, but "[m]erely having an impairment does not make one disabled for purposes of the ADA." Toyota Motor Mfg., KY, Inc. v. Williams, 122 S.Ct. 681, 690 (2002). The claimant must also demonstrate that the impairment substantially limits a major life activity, as discussed above. Temporary health problems or recovery times will seldom render a person disabled. "The impairment's impact must also be permanent or long-term." Toyota, 122 S.Ct. at 691.

Plaintiff testified that she was able to perform her job, despite her addiction, up until she entered a seven-week rehabilitation program. Plaintiff stated that once her workday schedule was free of treatment obligations, after the seven weeks, she was ready, willing and able to work again. Plaintiff might not have been the most effective or dependable worker before her treatment, but there is no evidence that she was substantially impaired in the activity of working, within the meaning of the ADA, except for the seven weeks when she was enrolled in treatment. The Fifth Circuit has rejected the contention that a temporary hospitalization is disabling. Burch v. Coca-Cola Co., 119 F.3d 305, 317 (5th Cir. 1997), citing Sanders v. Arneson Products, Inc., 91 F.3d 1351 (9th Cir. 1996) (psychological impairment requiring treatment and precluding work for three and one-half months not of sufficient duration to fall within the protections of the ADA as a disability). Many common

injuries and illnesses require seven weeks or more of recuperation time, but the entire population that falls prey to those afflictions is not considered disabled under the ADA. See also Bradford v. Cellxion, LLC, 2007 WL 2693415 (W.D. La. 2007) (several weeks of recuperation required after heart attack did not render claimant disabled), affirmed, 2008 WL 687286 (5th Cir. 2008). Plaintiff's impairment was, by her own admission, of little impact on her ability to attend and perform her work except for the short duration during which she obtained treatment that left her free of any significant impairment. If Plaintiff's status is assessed as of the time she was most affected by her limitation, she was not then suffering from a disability as defined in the ADA and its regulations.

**B. Record of Disability**

Plaintiff argues that she is disabled - - not because she has a current impairment that substantially limits a major life activity - - but because she has a "record of" such an impairment. See 42 U.S.C. § 12102(2)(B). The EEOC regulations state that a record of impairment "means has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. 1630.2(k).

Plaintiff, in support of her "record of" argument testified in her deposition that she reported to Betty Johnson, a LSUHSC employee, that she needed leave to receive treatment "to get off the pain medication." Plaintiff adds in an affidavit that she disclosed on her FMLA paperwork that she needed to take leave for drug addiction therapy. Just as a mere current impairment does not equal a current disability status, a record of a past impairment

does not equal a record of disability. The record at issue must also suggest that the impairment substantially limits a major life activity.

An employee presented a similar claim in Dupre v. Charter Behaviorial Health Systems of Lafayette, Inc., 242 F.3d 610 (5th Cir. 2001). The employee claimed that she had a record of disability of which her employer was aware when it fired her. The employer moved for summary judgment. The employee, in support of her claim, pointed to a health screening form that indicated she had back pain, was under a physician's care, and had undergone surgery related to the back problem. The Fifth Circuit affirmed summary judgment for the employer because the employee's evidence was insufficient to constitute a record of impairment. The evidence relied on by the employee failed to create a genuine issue of material fact because it did not indicate whether or how the health problem substantially limited any major life activity. Dupre, 242 F.3d at 615.

The Dupre decision cited in support Sherrod v. American Airlines, 132 F.3d 1112, 1120-21 (5th Cir. 1998), which affirmed a summary judgment in a record of impairment claim. The employee presented evidence of a record of prior back surgery and disability leave of absence, but the evidence did not show that the impairment substantially limited a major life activity. Summary judgment was also affirmed in Ellison v. Software Spectrum, Inc., 85 F.3d 187, 192 (5th Cir. 1996); nothing in the Ellison's personnel file had ever indicated that she was substantially limited by an impairment either in her ability to perform her job or in any other respect.

Summary judgment is, for similar reasons, warranted with regard to Plaintiff's "record of" claim. There is evidence that the LSUHSC records contained information that Plaintiff had an impairment (drug addiction), but there is no evidence that the LSUHSC records reflected directly or indirectly that the impairment was so severe as to substantially limit a major life activity. As the cited cases teach, a mere record of a diagnosis or impairment is insufficient. See Toyota, 122 S.Ct. at 690. The court is not aware of any precedent to the effect that every person who has a record of drug addiction of any nature is per se disabled, and such a rule would be contrary to the jurisprudence cited above.

### C. Regarded as Having a Disability

The third basis for establishing disability applies if the employee can prove that she was "regarded as" having an impairment that substantially limits a major life activity. 42 U.S.C. § 12102(2)(C). The EEOC regulations provide three ways an employee may establish she is regarded as having such an impairment: (1) she has an impairment that does not substantially limit major life activities but is treated by the defendant as constituting such a limitation; (2) she has an impairment that substantially limits major life activities only as a result of the attitudes of others towards such impairment; or (3) she has no impairment at all but is regarded by the employer as having a substantially limiting impairment. 29 C.F.R. § 1630.2(l); Bridges v. City of Bossier, 92 F.3d 329, 332 (5th Cir. 1996).

Plaintiff does not specify which of the three prongs of the "regarded as" definition she believes is applicable. She does argue, generally, that Mr. Miciotto's attitude toward her past

employment record changed after he became aware that she had been in treatment for drug addiction. Plaintiff bases this largely on the fact that Miciotto did not place Plaintiff on the "no hire" list immediately after she resigned and did not do so until years later when Plaintiff was about to be rehired (which was years after Miciotto had learned of the drug treatment). Plaintiff contends that Miciotto's attitude could only be attributed to his awareness of the drug treatment; had he really based his attendance concerns on health issues and child care problems, he would have inquired as to whether there had been a change of circumstances in Plaintiff's life that had alleviated those issues.

Plaintiff bears the burden, once again, of establishing that LSUHSC not only regarded her as having an impairment (drug addiction) but also believed that the impairment was substantially limiting of at least one major life activity. An employer does not necessarily regard an employee as having a substantially limited impairment "simply because it believes she is incapable of performing a particular job." Pryor v. Trane Co., 138 F.3d 1024, 1028 (5th Cir. 1998). Plaintiff does not claim to have any current impairment, so it appears her claim must be analyzed under the third prong of the test that applies when the claimant has no impairment at all but is regarded by the employer as having a substantially limiting impairment. See Zenor v. El Paso Healthcare System, Ltd., 176 F.3d 847, 859 (5th Cir. 1999) (claimant argued that he was not a current drug user, but was regarded by the employer as a drug addict, placing his claim under the third prong).

"[T]he fact that a person is perceived to be a drug addict does not necessarily mean that person is perceived to be disabled under the ADA." Zenor, 176 F.3d at 859. Even a plaintiff who is perceived as suffering from alcoholism or drug addiction must demonstrate that her employer perceives that condition to substantially limit her ability to perform a major life function. Id. at 860. With respect to the major life activity of working, the term "substantially limits" means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. 29 C.F.R. § 1630.2(j)(3); Zeno, 176 F.3d at 860.

Mr. Miciotto admitted that he had heard gossip that Plaintiff had been treated for drug addiction, but there is no testimony or other evidence in the record to suggest that Mr. Miciotto or any other LSUHSC official concluded from that bit of knowledge that Plaintiff was substantially limited in the ability to perform a class of jobs or a broad range of jobs in various classes as compared to the average comparable worker. There is not even summary judgment evidence that Miciotto or other official believed that the history of drug treatment rendered Plaintiff incapable of performing the job for which she applied. Plaintiff might argue that Miciotto's placement of Plaintiff on the do-not-hire list suggests that Miciotto believed Plaintiff's history of drug treatment rendered her incapable of performing a wide range of jobs, but there is nothing but a weak and tenuous inference of any such belief. In

contrast, the record is filled with the direct testimony of Mr. Miciotto that he did not want Plaintiff hired in his hospital because she had been a poor employee in the past, and there is documentation from that past employment to support Mr. Miciotto's assessment. Plaintiff has not presented evidence from which a reasonable juror could return a verdict in her favor on the issue of whether LSUHSC regarded Plaintiff, because of her drug addiction, as significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.

Summary judgment has been affirmed in similar cases. The claimant in Dupre v. Charter Behavioral presented evidence that the employer knew that she had a back impairment that required surgery and medication, and even necessitated some accommodation at work. The employee was not in fact substantially limited in any major life activity, and there was nothing in the record to indicate that the employer's perception of the condition was in any way inaccurate. The Fifth Circuit stated that even if it were assumed that the employer thought that the employee's condition would cause her to be absent, there was no evidence that the employer thought the employee was unable to perform other jobs. Summary judgment was affirmed, even though there was evidence that the employer referred to the back problem as if it were the reason for termination. Dupre, 242 F.3d at 615-16. See also Ellison, 85 F.3d at 192-93 (Fifth Circuit affirmed summary judgment on a "regarded as" claim despite evidence the employer knew of employee's cancer when there was no evidence

the employer regarded the condition as causing a substantially limiting impairment); Hinojosa v. Jostens, Inc., 128 Fed. Appx. 364 (5th Cir. 2005) (summary judgment on "regarded as" claim affirmed when employer terminated employee because arm impairment did not allow him to perform his job, but there was no evidence the employer regarded the employee as substantially limited in a major life activity); and Nielsen v. Moroni Feed Co., 162 F.3d 604 (10th Cir. 1998) (summary judgment for employer affirmed when employee perceived to be an illegal drug user proffered no evidence that the employer believed the perceived drug addiction was severe enough to substantially limit one or more major life activities). Summary judgment on Plaintiff's "regarded as" claim is proper for similar reasons.

**State Law Claim**

Plaintiff's state court petition invoked La.R.S. 23:323, a Louisiana statute that affords protections similar to those found in the ADA. A civil action based on Section 323 is subject to a prescriptive period of one year, subject to a maximum six-month suspension during the pendency of any administrative review by the EEOC or LCHR. Defendant sets forth in its motion the relevant dates and urges that this suit was filed several months after the prescriptive period ended. The Plaintiff's memorandum offers no opposition to the facially viable prescription argument, so summary judgment is also appropriate with respect to the state law claim. Accordingly, the Motion for Summary Judgment (Doc. 17) is **granted**, and a final judgment dismissing all of Plaintiff's claims will be entered.

THUS DONE AND SIGNED at Shreveport, Louisiana, this 27th day of May, 2008.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE